UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL MILLER, <br> BRIA FISHER, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES PERRY, <br><br> Defendant. | No. 1:18-cv-01101-JRS-MJD |

**Order on Motion for Summary Judgment (ECF No. 59)**

Alleging he violated their Fourth Amendment rights, *pro se* Plaintiffs Michael Miller and his girlfriend Bria Fisher sued Defendant James Perry, an officer with the Indianapolis Metropolitan Police Department ("IMPD") who had arrested Plaintiffs for, *inter alia*, battery and obstructing an investigation of a car accident. Officer Perry moves for summary judgment. (ECF No. 59.) For the following reasons, the motion is granted.

## I. Background

On April 13, 2016, at around 5 p.m., Fisher was driving north on Post Road in Indianapolis, toward 30th Street. (Fisher Dep. Tr. 17:15–18, ECF No. 60-2.) She was on her way to Miller's parents' house. (*Id.* at 15:18–20.) Fisher's car struck two vehicles operated by Paige Thomas and John Causey, respectively. (ECF No. 60-6 at 1.) At the time, Fisher was five-and-a-half months pregnant with Miller's child. (Fisher Dep. Tr. 13:1–7, ECF No. 60-2.) Remaining in her car, Fisher immediately

1

called Miller and told him she had been in an accident. (*Id.* at 21:7–18.) Miller, already nearby, said he would be on his way. (*Id.* at 23:3–4.)

Officer Perry was dispatched to and quickly arrived at the scene of the accident. (Perry Aff. ¶¶ 8, 10, ECF No. 60-3.) He first approached Fisher. (*Id.* ¶ 11.) Fisher, however, was still speaking on the phone with Miller, giving him directions to her location. (Fisher Dep. Tr. 23:13–24:1, ECF No. 60-2.) Fisher told Officer Perry to speak with the other drivers involved in the accident first, and he left to do so. (Perry Aff. ¶¶ 13–14, ECF No. 60-3.) Officer Perry obtained information from Thomas and Causey and directed them to move their cars from the road. (*Id.* ¶ 16.)

Fisher's car, however, was inoperable and remained in the middle of the road. (ECF No. 60-6 at 1.) Officer Perry returned to Fisher's car to get her license, registration, and insurance, as well as to get her account of the accident. (Perry Aff. ¶¶ 19–22, ECF No. 60-3.) Fisher was still on her phone. (*Id.*) Officer Perry told Fisher to get off the phone. (Fisher Dep. Tr. 23:13–24:1, ECF No. 60-2.) Fisher says she became upset because Officer Perry said this in a "yelling" voice. (*Id.* at 26:10–23.) While Fisher searched for the documents, Officer Perry left to continue gathering information from Thomas and Causey. (Perry Aff. ¶ 23, ECF No. 60-3.)

Officer Perry returned to Fisher's car. (*Id.* ¶ 24.) While the officer had been speaking with the other drivers, Miller arrived and was standing by Fisher's car. (*Id.* ¶ 25.) Miller says he was there to calm Fisher down and to ensure that she was uninjured. (Miller Dep. Tr. 22:6–18, 28:13–17, ECF No. 60-1.) Miller characterized Officer Perry's behavior in handling the investigation as "aggressive" in tone,

2

demeanor, and general "attitude." (*Id.* at 33:13–16.) Miller told the officer that Fisher had a high-risk pregnancy and that she needed to remain calm. (*Id.* at 33:22–34:11.) Miller also told Officer Perry he did not appreciate the rude manner the officer used when he told Fisher to get off the phone. (Perry Aff. ¶ 25, ECF No. 60-3.) Miller and Fisher repeatedly asked for a different officer to investigate the accident, but Officer Perry refused. (*Id.* ¶¶ 27–29, 31.)

Officer Perry believed Miller was interfering with his investigation of the accident by talking over him and preventing him from gathering information from Fisher. (*Id.* ¶ 35.) He ordered Miller to stand on the sidewalk if he could not remain quiet. (*Id.* ¶¶ 32, 34.) Miller became agitated, as there "was no need for [Officer Perry] to tell a young man like myself to go to the sidewalk when I'm trying to calm my girlfriend down when she's six months pregnant." (Miller Dep. Tr. 36:2–8, ECF No. 60-1.)

Officer Perry began escorting Miller to the sidewalk by putting one hand on Miller's back and one hand on his arm. (Perry Aff. ¶ 38, ECF No. 60-3.) At that point, Miller made physical contact with the officer, though the parties dispute the exact nature of that contact. According to Officer Perry, Miller "swung around and hit my right arm with his hand." (*Id.* ¶ 39.) According to Miller, Miller "grabbed" the officer while trying to grab Fisher. (Miller Dep. Tr. 39:21–40:5, ECF No. 60-1.) Believing Miller to have committed battery on a public safety official, Officer Perry grabbed Miller's right arm in order to handcuff him. (Perry Aff. ¶¶ 40, 42, ECF No. 60-3.) Miller immediately pulled away. (Miller Dep. Tr. 47:1–3, ECF No. 60-1.) To regain control of Miller, Officer Perry placed his hands on Miller's arm and neck, applied

3

force, and brought Miller to the ground. (Perry Aff. ¶¶ 46–47, ECF No. 60-3.) The officer ordered Miller to put his hands behind his back, but Miller would not comply, and the two continued struggling on the ground. (*Id.* ¶ 49.) According to Officer Perry, Fisher then approached and punched the top of the officer's head four to five times. (*Id.* ¶ 50.) Fisher denies touching Officer Perry, saying she was only trying to grab Miller's hand to help him out from under the officer. (Fisher Dep. Tr. 48:3–23, ECF No. 60-2.) During the altercation, Officer Michael Rogers of the IMPD arrived. (Perry Aff. ¶ 54, ECF No. 60-3.)

At some point, Miller stood up. (*Id.* ¶ 56.) Officers Perry and Rogers pulled Miller's hands behind his back and handcuffed him. (*Id.* ¶¶ 57–58.) Officer Perry then went to Fisher, standing nearby, and ordered her to put her hands behind her back. (*Id.* ¶¶ 63, 67.) When he tried to grab her hands to handcuff her, she pulled away, so the officer pulled her arms behind her back and handcuffed her. (*Id.* ¶¶ 65–66.) Fisher says that Officer Perry "kind of, like, pushed a little bit on the handcuffs," causing Fisher to fall on her side. (Fisher Dep. Tr. 51:2–4, ECF No. 60-2.)

Ultimately, an ambulance was called, and Fisher was found to be uninjured. (ECF No. 60-6 at 8.) The car crash did not affect Fisher's pregnancy, and her child was safely delivered a few months later. (Fisher Dep. Tr. 12:14–17, 24:13–18, ECF No. 60-2.) Miller said he was not hurt by the scuffle. (ECF No. 60-6 at 8.) Officer Perry sustained abrasions on his hand, elbow, and leg. (*Id.*)

On April 14, 2016, the Marion County Prosecutor's Office charged Miller with Battery Against a Public Safety Official in violation of Indiana Code §§ 35-42-2-1(c)(1)

and (e)(2); two counts of Resisting Law Enforcement in violation of Indiana Code § 35-44.1-3-1(a)(1); and Disorderly Conduct in violation of Indiana Code § 35-45-1-3(a)(1). (ECF No. 60-7.) The same day, Fisher was charged with Battery Against a Public Safety Official in violation of Indiana Code §§ 35-42-2-1(c)(1) and (e)(2), and Resisting Law Enforcement in violation of Indiana Code § 35-44.1-3-1(a)(1). (ECF No. 60-9.) Both cases were dismissed on November 22, 2017. (ECF No. 60-14 at 7.)

On April 11, 2018, Miller and Fisher sued Officer Perry under 42 U.S.C. § 1983, alleging their seizure by Officer Perry and his use of force contravened their Fourth Amendment rights. Officer Perry filed a motion for summary judgment. (ECF No. 59.) As required by Local Rule 56–1(k), Office Perry also filed a notice informing Miller and Fisher of the possible consequences of not responding to the motion for summary judgment. (*See* ECF No. 62.) Miller and Fisher nevertheless did not respond. The Court deems their failure to respond an admission of the officer's account of the material facts. *See* Fed. R. Civ. P. 56(e)(2); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of production. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative

5

evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169). If the movant discharges its initial burden, the burden shifts to the nonmovant, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of his case. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). The Court must construe all facts and any reasonable inferences arising from them in favor of the nonmovant. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citation omitted).

### III. Discussion

Miller and Fisher bring two kinds of constitutional claims: unlawful arrest and excessive force. Although the complaint throws in language "reserv[ing] the right to proceed with any and all claims, which the facts averred in this Complaint support," (Compl. ¶ 28, ECF No. 1), Miller and Fisher have not indicated in the intervening three years that they have any other claims. Besides, "district courts are not charged with seeking out legal issues lurking within the confines of the pro se litigant's pleadings . . . ." *Kiebala v. Boris*, 928 F.3d 680, 684–85 (7th Cir. 2019) (cleaned up). Thus, the Court will address only the two claims that they actually asserted.

In considering these claims, the Court must be mindful of whether Officer Perry is entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are immune from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v.*

6

*Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if an officer has "fair notice" that the challenged conduct is unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "Whether an official is entitled to qualified immunity on a motion for summary judgment turns on whether the plaintiff has both (1) alleged that the official committed acts violating a clearly established right and (2) adduced 'evidence sufficient to create a genuine issue as to whether the [official] in fact committed those acts.'" *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

*A. Unlawful Arrest*

A custodial arrest effectuated without probable cause clearly violates the Fourth Amendment. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018); *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An officer may assert qualified immunity so long as there was "arguable" probable cause to justify an arrest. *See McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012) ("Arguable probable cause exists when a reasonable officer could mistakenly have believed that he had probable cause to make the arrest."); *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (same); *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011) (same).

In Indiana, a person commits the offense of resisting law enforcement if he "knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the

7

officer's duties[.]" Ind. Code § 35-44.1-3-1(a)(1). A person commits the offense of battery if he "knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . . ." Ind. Code § 35-42-2-1(c)(1).[1]

Officer Perry had at least arguable probable cause to arrest Miller. Although the parties dispute how to characterize Miller's touching of the officer, even Miller's characterization of events—that he "grabbed" the officer—rises to the level of misdemeanor battery. Additionally, Miller testified that he became "agitated" and "upset" after the officer ordered him to go to the sidewalk. (Miller Dep. Tr. 36:2–8, ECF No. 60-1.) In Indiana, "[a]ny touching, however slight, may constitute battery." *Impson v. State*, 721 N.E.2d 1275, 1285 (Ind. Ct. App. 2000). An unwanted grab by an agitated man would certainly seem to satisfy the statute. *Cf. McFarland v. State*, 384 N.E.2d 1104, 1108 (Ind. Ct. App. 1979) (sufficient evidence of battery where defendant had "grabbed" victim, among other things). Furthermore, even before the battery, Officer Perry knew that Miller was talking over him, berating him for his allegedly rude manner, and otherwise trying to speak with the officer while the officer attempted to speak with Fisher about the multi-vehicle accident he was tasked with investigating. Those facts establish probable cause to arrest Miller for "knowingly . . . interfer[ing] with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties[.]" Ind. Code § 35-44.1-3-1(a)(1). On this record, there was at least arguable probable cause to arrest Miller for battery or for resisting law enforcement.

---

[1] If the battery is on a public safety official while the official is engaged in the official's duties, the offense becomes a felony. *See* Ind. Code § 35-42-2-1(e)(2).

8

Officer Perry also had at least arguable probable cause to arrest Fisher. Even if the Court ignores the eyewitness accounts of Fisher hitting Officer Perry, (*see, e.g.,* ECF No. 160-6 at 8), Fisher admits that she attempted to grab Miller away from Officer Perry while Officer Perry was attempting to arrest Miller. (Fisher Dep. Tr. 48:3–23, ECF No. 60-2.) Arresting people who commit crimes is of course part of a police officer's official duties. Thus, there was at least arguable probable cause to believe that, by trying to grab Miller during the scuffle, Fisher "knowingly. . . interfere[d] with a law enforcement officer . . . while the officer [wa]s lawfully engaged in the execution of the officer's duties[.]" Ind. Code § 35-44.1-3-1(a)(1).

Because probable cause arguably justified both arrests, Officer Perry is entitled to qualified immunity, and Miller's and Fisher's claims for unlawful arrest fail as a matter of law.

*B. Excessive Force*

From a general perspective, people have the "clearly established right to be free from excessive force" in dealing with the police. *Baird v. Renbarger*, 576 F.3d 340, 347 (7th Cir. 2009). The difficulty comes in deciding what is excessive and what is not. Force is excessive only if an officer "use[s] greater force than [i]s reasonably necessary to make an arrest." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 862 (S.D. Ind. 2006). In evaluating whether a use of force was reasonable, the Court considers factors like the "severity of the crime at issue," whether the suspect posed an "immediate threat to safety," and whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Baird*, 576 F.3d at 344 (citing *Graham*

9

*v. Connor*, 490 U.S. 386, 396 (1989)). The Court is mindful that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "[P]olice officers are entitled to qualified immunity unless existing precedent *squarely* governs the specific facts at issue," *Kisela*, 138 S. Ct. at 1153 (emphasis added), or "the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment," *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008) (citation omitted).

Miller challenges whether it was reasonably necessary for Officer Perry to tackle him to the ground. The reasonableness of the force depends on the surrounding circumstances. Even when the evidence is viewed in the light most favorable to him, Miller was not a docile bystander. Miller was agitated by the officer's tone, impeded the officer's investigation of the car accident, made unwanted contact with the officer, and pulled away when the officer tried to arrest him for that unwanted contact. Based on these circumstances, Officer Perry reasonably could have believed that Miller was "actively resisting arrest or attempting to evade arrest by flight." *Baird*, 576 F.3d at 344. It was at this point that Officer Perry tackled Miller to the ground. Because Miller appeared to be resisting arrest, the Court cannot say that the tackle was an excessive use of force.[2] *Cf. Dawson v. Brown*, 803 F.3d 829, 834 (7th Cir. 2015)

---

[2] Nor does the Court find that a tackle not resulting in injury is the kind of "plainly excessive" conduct that is obviously unconstitutional. *Chelios*, 520 F.3d at 691.

(kick and tackle of arrestee's father were not excessive use of force because officers "could have reasonably believed that [father] was interfering with a lawful arrest").

Fisher's complaint has to do with Officer Perry's conduct when he handcuffed her. He grabbed Fisher's arms to bring them behind her back when she would not put them behind her back voluntarily. (Perry Aff. ¶¶ 63–67, ECF No. 60-3.) According to Fisher's story, Officer Perry also "pushed a little bit on the handcuffs" once he applied them, causing Fisher to momentarily fall on her side. (Fisher Dep. Tr. 51:2–4, ECF No. 60-2.) Fisher's descriptions of this "push" on the handcuffs are equivocal. She initially calls it a "shove" or "throw" but then clarifies that it "wasn't necessarily like throwing." (*Id.* at 51:18–22.) She says that the "push" was more akin to Officer Perry "dropp[ing] me there knowing the handcuffs are behind my back and I might fall on my stomach or anything like that . . . ." (*Id.*) The Court finds that Officer Perry's incidental contact with Fisher while he handcuffed her—the grabbing of her arms—was "the sort of de minimis touching that, as a matter of law, has no Fourth Amendment implications." *Carlson v. Bukovic*, 621 F.3d 610, 621 (7th Cir. 2010) (noting that police officers inevitably must use "a combination of verbal declarations and gestures" in the course of civilian encounters). An incidental arm grab is not an excessive use of force.

As to the "push" on the handcuffs, caselaw clearly establishes only that "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citation omitted). Although Fisher

11

complains that the handcuffs behind her back were "uncomfortable," the Court sees nothing in the record establishing that the handcuffs caused Fisher any degree of pain or injury. Discomfort alone is generally insufficient to establish an excessive-force claim premised on an officer's use of handcuffs. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (no constitutional violation where tight handcuffs caused plaintiff only discomfort or "mild" pain). Even if Officer Perry had some constitutional obligation to handcuff all pregnant women from the front or otherwise treat Fisher a little more gently given the situation, the Court has found no Seventh Circuit caselaw clearly establishing either proposition. Certainly, Fisher has not identified any such caselaw. At worst, Officer Perry is entitled to qualified immunity with respect to Fisher's excessive-force claim.

## IV. Conclusion

Officer Perry's motion for summary judgment, (ECF No. 59), is **granted**. For each claim, the officer either (1) did not contravene Miller's or Fisher's Fourth Amendment rights or (2) did not do so in a way that violated clearly established law, entitling the officer to qualified immunity. Accordingly, all claims are **dismissed with prejudice**. Final judgment shall issue in a separate order.

Date: 6/21/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MICHAEL MILLER
8555 Brookhill Court
Indianapolis, IN 46234

BRIA FISHER
8555 Brookhill Court
Indianapolis, IN 46234

Elise Bowling
OFFICE OF CORPORATION COUNSEL
elise.bowling2@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov